<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SHAWN L. ROBINSON,                      :
                                        :   Civil Action No. 08-2023(GEB)
        Plaintiff,              :
                                        :
                                        :
        v.                      :   **OPINION**
                                        :
MICHELLE RICCI, et al.,                 :
                                        :
        Defendants.             :

**APPEARANCES:**

    SHAWN L. ROBINSON, Plaintiff <u>pro se</u>
    430720 SBI # 0S01503529
    New Jersey State Prison
    P.O. Box 861
    Trenton, New Jersey 08625

**BROWN, JR.,** Chief Judge

    Plaintiff Shawn L. Robinson ("Robinson"), currently a state inmate confined at the New Jersey State Prison in Trenton, New Jersey, brings this action <u>in forma pauperis</u>, alleging violations of his constitutional rights under 42 U.S.C. § 1983. The Court granted plaintiff <u>in forma pauperis</u> status, pursuant to 28 U.S.C. § 1915(a), by Order entered on May 5, 2008.

    At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the

reasons set forth below, the Court concludes that the Complaint should proceed in part.

## I.   BACKGROUND

Robinson brings this action, pursuant to 42 U.S.C. § 1983, against defendants, Michelle Ricci, Warden at New Jersey State Prison ("NJSP"), and William Wade, Jr., Unit Staff Officer at NJSP. (Complaint, Caption and ¶¶ 4b, 4c).  The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

Robinson alleges that, on January 3, 2008, he was scheduled to use the prison law library, but defendant Wade denied plaintiff access to the library that day.  Robinson filed an administrative remedy, but Wade issued a false disciplinary report against plaintiff, charging plaintiff with having a towel and clear plastic covering the bars on his cell door.  Robinson spent 16 days in disciplinary detention without any recreation or running water.  He filed numerous administrative remedies concerning the conditions in disciplinary detention, which also included allegations that he was denied clean laundry and access to his legal documents.  Robinson also states that he appealed the disciplinary decision.  (Compl., Statement of Claims at ¶¶ 1-7).

Robinson further alleges that a number of his administrative remedies were not filed or answered, including his initial grievance concerning the denial of access to the law library, thus preventing him from exhausting his administrative remedies. After Robinson appealed the disciplinary decision, defendant Wade falsified two more disciplinary reports against plaintiff.  He claims that he received severe sanctions for these two minor infractions, even though he had not incurred any disciplinary infractions for a year, and others with more serious infractions received less severe sanctions than plaintiff.[1] (Compl., Statement of Claims at ## 8-9).

On February 14, 2008, defendant Wade went to plaintiff's cell after plaintiff allegedly received permission to make a telephone call to the ombudsman.  Wade purportedly unplugged the phone and told plaintiff: "Since you like to call the ombudsman, I am going to make sure you never use the phone again."  The next day, plaintiff received a disciplinary report for "unauthorized use of mail or telephone."  Robinson alleges that Wade and others retaliated against him for filing grievances by falsifying reports against plaintiff concerning the telephone incident, and

---

[1]  The sanctions imposed included: 30 days disciplinary detention; 30 days loss of telephone privilege; 30 days loss of recreation; 120 days loss of good time credit, and 180 days of administrative segregation.

3

refuting plaintiff's claim that he was given permission to use the phone.  (Compl., Statement of Claims at ## 10-15).

On February 15, 2008, unit staff officer Avino also unplugged the telephone plaintiff was using to call the ombudsman.  Robinson immediately requested to see a supervisor. The supervisor, Sgt. C. Goode, went to plaintiff's cell and Avino told the sergeant that he had a problem with plaintiff using the phone during count.  Robinson complains that he was not permitted to call Sgt. Goode at his disciplinary hearing, and there was no physical evidence submitted at the hearing.[2]  Robinson further alleges that, while the disciplinary hearing officer ("DHO") was questioning Avino at the disciplinary hearing, plaintiff overheard staff officer Bodnar tell the court-line that they should "bury" plaintiff.  The DHO allegedly responded, "Don't worry, I am going to hang that nigger."  Robinson appealed the DHO's decision without success.  (Compl., Statement of Claims at ## 16-23).

Robinson repeats allegations that defendants have prevented him from exhausting his administrative remedies by not responding to his grievances or not filing them.  Robinson complains that

---

[2]  It is not clear from the Complaint whether the disciplinary hearing plaintiff mentions concerns the earlier infraction of January 3, 2008 (involving the towel and plastic allegedly covering plaintiff's cell) or some other alleged infractions.  Robinson states that defendant Wade filed false disciplinary reports against plaintiff, but does not mention whether these institutional charges were referred for a hearing.

the grievance system at New Jersey State Prison is ineffective because the inmate does not get a receipt or notification when a grievance is submitted.  There also are no boxes available to submit administrative remedy forms or grievances.  (Compl., Statement of Claims at ¶¶ 24-26).

Robinson further complains that the grievance system is faulty because the lack of confidentiality exposes the complaining inmate to reprisals and harassment by the NJDOC staff.  He claims that his mail has been tampered with on numerous occasions since he entered the state prison, and his incoming legal mail has been opened outside of his presence and held until the court deadlines had passed with respect to his § 2254 habeas petition and another § 1983 complaint filed in Connecticut.  Robinson alleges that his outgoing legal mail also has been delayed or has not been mailed as requested.  (Id. at ¶¶ 27-32).

In addition, Robinson complains that he has been denied adequate access to the law library, legal assistance and legal materials since he was placed at the New Jersey State Prison.  He claims that defendant Ricci has deprived him of his legal materials and personal property while he was in disciplinary detention.  He filed grievances concerning these issues in January and February 2008, but has not received any response.  Plaintiff also states that he wrote grievances concerning threats

of bodily harm made against him by NJDOC staff officer R. Bodnar[3] while plaintiff was in restraints, but this grievance went unanswered.  (Id. at ¶¶ 33-39).

Plaintiff further alleges that Bodnar and other staff subjected him to an unlawful and unsupervised strip search in order to provoke plaintiff into a verbal and physical confrontation.  Robinson also complains that he has been subjected to strip searches inside of his cell on many occasions without a supervisor present and without any reasonable suspicion that plaintiff had contraband.  At one instance, Bodnar allegedly swung his baton at plaintiff's head and threatened to "beat his brains out."  (Id. at ¶¶ 40-41, 51-53).

Next, Robinson complains that he was given one sheet, blanket and towel while he was in disciplinary detention, which had a chemical smell that made plaintiff gravely ill.  He had to be sent to the infirmary because he was having chest pains, difficulty breathing, fever and high blood pressure.  Plaintiff also had coughing and spat up blood.  However, after only one night in the infirmary, Robinson was sent back to disciplinary detention.  In contrast, he had been held in the infirmary for almost a week when he had hurt his toe.  Bodnar escorted

---

[3]  Robinson does not name Correctional Officer Bodnar as a defendant in his Complaint, but the body of his Complaint, namely, his lengthy statement of claims repeatedly alleges that Bodnar violated his constitutional rights.  Therefore, this Court will presume that plaintiff intended to name Bodnar as a defendant, and will direct the Clerk of the Court to amend the docket to reflect Bodnar as a named defendant in the caption.

plaintiff back to his cell, verbally harassing plaintiff along the way.  When plaintiff returned to his cell, Bodnar opened the window so that Robinson would be cold.  (Id. at ¶¶ 42-46, 50).

Robinson also complains that defendant Ricci has not answered plaintiff's grievances concerning Bodnar's harassment on February 27, 2008, when Bodnar came to plaintiff's cell and made a gesture of plaintiff being hanged.  Bodnar also made racially derogatory remarks to plaintiff on January 17, 2008, which were never addressed by Ricci.  (Id. at ¶¶ 47-49).

Robinson next complains about the conditions of his confinement during disciplinary detention in January 2008.  He states that he was placed in a cell for 16 days without running water.  In addition, Robinson states that he filed grievances about the ventilation system and lack of fresh air in his housing unit, but nothing has been done to address the problem.  He states that defendant Ricci does not conduct daily or weekly tours of the close custody and special housing units, and many inmates allegedly die or take their life because of the poor living conditions there.  Robinson also alleges that he has been denied clean clothes and laundry services while he was held in disciplinary detention.  He was forced to take cold showers and sleep on the floor of a flooded cell.  When another correctional officer tried to help plaintiff, Robinson claims that Ricci fired the officer.  (Id. at ¶¶ 55, 66-71).

Robinson further alleges that he has been deprived of outside recreation for a substantial period of time.  In January 2008, plaintiff was denied outside recreation for 19 consecutive days.  After he complained about this lack of yard recreation by filing a grievance, he was sanctioned with 30 days loss of outside recreation.  He was again sanctioned with 30 days loss of yard recreation after he served his 30 days disciplinary detention.  Robinson complains that he has been denied recreational time for very long periods of time, even when he was in general population.  Yard recreation has been denied to those in the administrative segregation unit and disciplinary detention altogether.  (Id. at ¶¶ 57-65).

Moreover, Robinson states that he has been denied adequate health care and medical treatment for his difficulty breathing and his coughing and spitting up blood.  He also alleges that he was assaulted by a DOC staff officer when he was in the mental health unit.  (Id. at ¶¶ 70, 72).

Next, Robinson complains that the correctional staff would throw his clothes on the dirty floor during the strip searches, subjecting plaintiff to skin diseases and staph infections.  His shoes also were confiscated during this time after the strip search.  Specifically, Robinson alleges that the dirty linens and clothes cause damage to his lungs and skin from disease and staph infections.  He claims that his eyes, face, skin, nose, mouth and throat start burning when he sleeps on his sheets.  The medical

staff allegedly told plaintiff that the hard soap used in the laundry causes this to happen.  Robinson complains that he has not been given a pass to have mild soap used for his laundry to alleviate this problem.  Robinson finally alleges that he was denied medical treatment after his eyes were accidentally sprayed with a cleaning disinfectant.  He alleges that all of these problems started when defendant Wade started working in the unit where plaintiff is housed.  (Id. at ¶¶ 54, 56, 73-79).

Robinson seeks immediate medical treatment for his injuries and conditions.  He also asks that his legal mail and materials be returned to him immediately.  He seeks further injunctive relief, namely, his return to general population in the prison, outside recreation time, and the cessation of all harassment and retaliation.  Finally, Robinson asks for compensatory and punitive damages in an unspecified amount.  (Compl., Relief).

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§

1915(e)(2)(B) and 1915A.  Here, plaintiff is a prisoner who is proceeding in forma pauperis, and he is asserting claims against government prison officials with respect to incidents occurring while he was confined.  Consequently, this action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) and § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, __ U.S. __, 127 S.Ct. 2197, 2200 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

In short, a pro se prisoner plaintiff simply need comply with the pleading requirements of Rule 8(a)(2)(complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief").  See Erickson, 127 S.Ct. at 2200.  Thus, a complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n. 12 (3d Cir. 2004).  "Specific facts are not

10

necessary; the statement need only 'give the defendant fair
notice of what the ... claim is and the grounds upon which it
rests." <u>Erickson</u>, 127 S.Ct. at 2200 (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires more
> than labels and conclusions, and a formulaic recitation of
> the elements of a cause of action will not do, <u>see Papasan</u>
> <u>v. Allain</u>, 478 U.S. 265, 286 (1986)(on a motion to dismiss,
> courts "are not bound to accept as true a legal conclusion
> couched as a factual allegation").  Factual allegations must
> be enough to raise a right to relief above the speculation
> level. ...

<u>Bell v. Atlantic Corp. v. Twombly</u>, 550 U.S. ___, 127 S.Ct. 1955,
1964-65 (2007)(quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).
Accordingly, a pro se prisoner plaintiff may allege only enough
factual matter (taken as true) to suggest the required elements
of the claim(s) asserted.  <u>Twombly</u>, <u>supra</u>; <u>Phillips v. Allegheny</u>,
515 F.3d 224, 234-35 (3d Cir. 2008).

A complaint is frivolous if it "lacks an arguable basis
either in law or in fact."  <u>Neitzke v. Williams</u>, 490 U.S. 319,
325 (1989) (interpreting the predecessor of § 1915(e)(2), the
former § 1915(d)).  The standard for evaluating whether a
complaint is "frivolous" is an objective one.  <u>Deutsch v. United</u>
<u>States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A <u>pro</u> <u>se</u> complaint may be dismissed for failure to state a
claim only if it appears "'beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle
him to relief.'"  <u>Haines</u>, 404 U.S. at 521 (quoting <u>Conley v.</u>

Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the United States Constitution.  Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party

12

> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.  ANALYSIS

A.  Conditions of Confinement

Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993).  However, the Constitution "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981).

The Eighth Amendment prohibits conditions that unnecessarily and wantonly inflict pain, or are grossly disproportionate to the severity of the crime warranting imprisonment.  Rhodes, 452 U.S. at 346-47.  The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society."  Id. at 346.

"[I]t is well settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994).  To determine whether the conditions of confinement violate the Eighth Amendment, the courts employ a test that includes objective and subjective elements, both of which must be satisfied by the plaintiff.  See Counterman v. Warren County Corr. Facility, 176 Fed. App. 234, 238 (3d Cir. 2006) (citing Beers-Capitol v. Whetzel, 256 F.3d 120, 131 (3d Cir. 2001), quoting, in turn, Farmer, 511 U.S. at 842-46).

A prisoner may satisfy the objective element of a conditions-of-confinement claim, that a deprivation be "sufficiently serious," if he can show that the conditions alleged, either "alone or in combination, . . . deprive him of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. at 347-48.  Such necessities include: "adequate food, clothing, shelter, sanitation, medical care, and personal safety." Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992).

Here, Robinson alleges that he was placed in disciplinary detention for 16 days without running water.  He adds that the ventilation system was bad, that he was forced to take cold showers and sleep on the floor of a flooded cell, and that he was denied clean clothes and laundry services during his detention. (Compl., ¶¶ 55, 66-71).  The Complaint is unclear whether these conditions have continued beyond the 16 days.

14

This Court finds that these allegations, if true, may be sufficient at this early stage to show "extreme deprivations" necessary to satisfy the objective component of an Eighth Amendment claim.  Therefore, Robinson's conditions of confinement claim may be allowed to proceed at this time.

B.  <u>Denial of Recreation Claim</u>

The denial of exercise or recreation can result in a constitutional violation.  "[M]eaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'" <u>Peterkin v. Jeffes</u>, 855 F.2d 1021, 1031 (3d Cir. 1988)(*quoting* <u>Spain v. Procunier</u>, 600 F.2d 189, 199 (9th Cir. 1979)); <u>see also</u> <u>Keenan v. Hall</u>, 83 F.3d 1083, 1089 (9th Cir. 1996)("[d]eprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation."); <u>Patterson v. Mintzes</u>, 717 F.2d 284, 289 (6th Cir. 1983); <u>Campbell v. Cauthron</u>, 623 F.2d 503, 506-07 (8th Cir. 1980); <u>Kirby v. Blackledge</u>, 530 F.2d 583, 587 (4th Cir. 1976); <u>Loe v. Wilkinson</u>, 604 F. Supp. 130, 135 (M.D.Pa. 1984).  However, the lack of exercise can only rise to a constitutional level "where movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened." <u>Spain</u>, 600 F.2d at 199.  Thus, a constitutional violation will occur when the deprivation of exercise extends for a prolonged period of time and tangible physical harm resulting from the lack of exercise is demonstrated.

In order to demonstrate a deprivation of a constitutional right to recreation, Robinson also must satisfy the Eighth Amendment standard and show deliberate indifference on the part of prison officials.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Here, Robinson alleges that he has complained about the lack of outside recreation, but nothing has been done.  It appears that recreation time is denied while plaintiff was confined in disciplinary detention.

Based on the allegations asserted by plaintiff in the Complaint, this Court finds no constitutional deprivation at this time.  It would appear that Robinson has not been denied recreation time in its entirety, only yard recreation, and this was curtailed while plaintiff was confined in disciplinary detention.  Thus, Robinson has not demonstrated deliberate indifference by defendants to plaintiff's recreational needs.  Prison officials have a legitimate governmental interest in maintaining prison security and the safe operation and administration of recreation for all inmates.  Decisions by prison administrators regarding matters of security, discipline, and the administration and operation of the prison are accorded great deference.  See Bell v. Wolfish, 441 U.S. 520, 547 (1979).

Additionally, Robinson has not alleged any tangible physical harm resulting from the alleged restricted outside recreation.  Therefore, this Court finds no impingement on plaintiff's constitutional rights by the limited restriction on outside

16

recreation, especially where plaintiff alleges no tangible physical harm or injury from the alleged denial of yard recreational time.  Plaintiff's claim alleging denial of recreation will be dismissed because he fails to state a claim of a cognizable federal constitutional deprivation at this time.

C.   Inadequate Medical Care Claim

The Eighth Amendment proscription against cruel and unusual punishment also requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege:  (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for

which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotations and citations omitted); see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d

Cir. 1979) (internal quotation and citation omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment.  See Rouse, 182 F.3d at 197.  The court also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment.  Atkinson, 316 F.3d at 266.  See also Monmouth County Correctional Institutional Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

Here, Robinson alleges that he has been denied adequate health care and medical treatment for his complaints that he has difficulty breathing and that he is coughing and spitting up blood.  However, the Complaint fails to demonstrate that defendants were deliberately indifferent to plaintiff's medical

needs, and thus, his Complaint must be dismissed because he can't prove the second necessary element of an Eighth Amendment denial of medical care claim.

The allegations in the Complaint show that Robinson received medical attention and treatment for his complaints, but plaintiff complains that he did not stay in the infirmary as long as he did for a toe injury.  Thus, Robinson does not allege that he did not receive medical care; rather, he only compares the length of his stay in the infirmary to another medical incident, which he deems less significant.

These allegations merely show that Robinson received the medical attention the prison medical staff determined that plaintiff needed at the time of his medical complaints, but that Robinson apparently disagrees with the length of the medical treatment provided.  As referenced above, "mere disagreements over medical judgment do not state Eighth Amendment claims." White, 897 F.2d at 110.  Therefore, even if the medical judgment is later determined to be wrong, at most what might be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

Consequently, based on plaintiff's allegations, this Court finds that Robinson has not met either prong under the Estelle test, deliberate indifference or serious medical need, and therefore, this claim will be dismissed without prejudice for failure to state a claim upon which relief may be granted at this time.

D.  Access to Law Library Claim

Courts have recognized different constitutional sources for the right of access to the courts.  Principally, the right of access derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[4] The right of access to the courts requires that "adequate, effective, and meaningful" access must be provided inmates who wish to challenge their criminal charge, conviction, or conditions of confinement.  Bounds v. Smith, 430 U.S. 817, 822 (1977).  In other words, prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts."  Id. at 825. "'[T]he touchstone ... is meaningful access to the courts.'" Peterkin v. Jeffes, 855 F.2d 1021, 1037 (3d Cir. 1988)(quoting Bounds, 430 U.S. at 823)(internal quotation omitted).

---

[4]  The right of access to the courts is an aspect of the First Amendment right to petition.  McDonald v. Smith, 472 U.S. 479, 482 (1985); Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983); Milhouse v. Carlson, 652 U.S. 371, 373 (3d Cir. 1981).  The Supreme Court also found that "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights."  Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also, Hudson v. Palmer, 468 U.S. 517, 523 (1984)("prisoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts"); Bounds v. Smith, 430 U.S. 817 (1977); Wolff v. McDonnell, 418 U.S. 539, 576 (1974).  The right of access to the courts might also arise under the Sixth Amendment's right to counsel; however, under the circumstances of the present case, the Sixth Amendment clearly is not implicated.

In Bounds, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original).  Similarly, a pretrial detainee has a right of access to the courts with respect to legal assistance and participation in one's own defense against pending criminal charges.  See, e.g., May v. Sheahan, 226 F.3d 876, 883-84 (7th Cir. 2000); Caldwell v. Hall, 2000 WL 343229 (E.D. Pa. March 31, 2000).  But see United States v. Byrd, 208 F.3d 592, 593 (7th Cir. 2000) (pretrial detainee who rejects an offer of court-appointed counsel in satisfaction of the Sixth Amendment right to counsel has no alternative right to access to a law library); Wilson v. Blankenship, 163 F.3d 1284, 1290-91 (11th Cir. 1998) (same); United States v. Walker, 129 F.3d 1266, 1997 WL 720385, **4 (6th Cir. 1997) (same).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

Here, Robinson fails to allege any actual injury as a result of the alleged denial of access to the prison law library.  He was able to file this Complaint in a timely manner, and he does not articulate how the restrictions on his use of the law library has hindered his efforts to either pursue this claim, file administrative grievances, or file any direct appeal or claims for collateral review of his conviction.  Therefore, Robinson's claim alleging denial of access to the law library will be dismissed without prejudice for failure to state a claim at this time.

E.  False Disciplinary Charges

Next, Robinson alleges that defendants have filed false disciplinary charges against him.  The act of filing false

disciplinary charges does not itself violate a prisoner's constitutional rights.  See Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir. 1986)(holding that "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"), cert. denied, 485 U.S. 982 (1988); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984)(finding that so long as prison officials provide a prisoner with the procedural requirements outlined in Wolff v. McDonnell, 418 U.S. 539, 558 (1974), then the prisoner has not suffered a constitutional violation).  See also Creter v. Arvonio, No. 92-4493, 1993 WL 306425, at *7 (D.N.J. Aug. 5, 1993); Duncan v. Neas, No. 86-109, 1988 WL 91571, at *1 (D.N.J. Aug. 30, 1988)(determining that "the alleged knowing falsity of the charge [does not state] a claim of deprivation of a constitutionally protected liberty interest ... where procedural due process protections were provided").

In this case, Robinson does not allege that he was denied an institutional disciplinary hearing or an opportunity to present evidence to refute the charges.  He does allege, however, that he was not permitted to call Sgt. Goode at his disciplinary hearing.  This allegation does not rise to the level of a constitutional deprivation.  Inmates do not have an absolute federal constitutionally-protected right to confront and cross-examine

24

witnesses at their prison disciplinary hearings.[5]  Wolff v. McDonnell, 418 U.S. at 567-68.  See also Baxter v. Palmigiano, 425 U.S. 308, 321-22 (1976); Young v. Kann, 926 F.2d 1396, 1404 (3d Cir. 1991); Sanchez v. Roth, 891 F. Supp. 452, 458-59 (N.D.Ill.1995); Harrison v. Pyle, 612 F. Supp. 850, 854-55 (D. Nev. 1985).  Accordingly, Robinson's claim regarding false disciplinary charges will be dismissed for failure to state a cognizable claim under § 1983.

F.  Strip Search Claim

Robinson also asserts that defendants have conducted strip searches without cause or supervision in violation of his constitutional rights.  With regard to strip search claims, the United States Supreme Court held that a reasonableness test should be employed when examining the constitutionality of a strip search that encroaches upon the personal privacy of an inmate and the integrity of the inmate's body.  Bell v. Wolfish, 441 U.S. 520 (1979); see also Turner v. Safley, 482 U.S. 78 (1987) (a prison regulation which infringes upon an inmate's

_____

[5]  In Wolff v. McDonnell, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals."  Wolff, 418 U.S. at 563-71.  In this case, there are no allegations that Robinson was denied these due process requirements.

constitutionally recognized right is valid only if it is reasonably related to a legitimate penological interest).

The Supreme Court opined that this reasonableness standard requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.   Wolfish, 441 U.S. at 559.  See e.g., Brown v. Blaine, 185 Fed. Appx. 166 (3d Cir. June 16, 2006)(three strip searches alleged to be unsanitary, demeaning and humiliating held to be constitutional); Del Raine v. Williford, 32 F.3d 1024, 1038-41 (7th Cir. 1994)(rejecting claim that rectal probe performed in lobby area of prison hospital was "unnecessarily brutal, painful, and humiliating"); Michenfelder v. Sumner, 860 F.2d 328, 332-34 (9th Cir. 1988)(upholding policy of conducting visual body cavity searches every time prisoner leaves or returns to maximum security unit or moves within unit).

Most of these cases involve incidents where the strip search was conducted upon a prisoner's return to his unit after having left his cell or the prison.  In this case, however, Robinson contends that his searches were conducted for no reason other than to humiliate and harass him in retaliation for filing grievances.  Moreover, he alleges that the strip searches occurred while he was in disciplinary detention and had not left

26

his cell.  Accordingly, this Court will allow this claim to proceed at this time.

G.  Interference with Legal Mail Claim

Inmates have a limited liberty interest in their mail under the First and Fourteenth Amendments; thus, an inmate's constitutional right to send and receive mail may be restricted only for legitimate penological interests.  See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987).  A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation.  Morgan v. Montayne, 516 F.2d 1367 (2d Cir. 1975), cert. denied, 424 U.S. 973 (1976).

The assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen states a First Amendment claim.  See, e.g., Antonelli v. Sheahan, 81 F.3d 1422, 1431-32 (7th Cir. 1996); Castillo v. Cook County Mail Room Dep't, 990 F.2d 304 (7th Cir. 1993).  The Court of Appeals for the Third Circuit has held that "a pattern and practice of opening properly marked incoming court mail outside an inmate's presence infringes communication protected by the right to free speech.  Such a practice chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court."  Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995) (applying the Turner analysis), implied overruling on other grounds recognized in Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).

Recently, the Third Circuit held that the legal mail policy of state prison in opening legal mail outside the presence of the inmate violated the inmate's First Amendment right to freedom of speech, and was not reasonably related to prison's legitimate penological interest in protecting health and safety of prisoners and staff.  <u>Jones v. Brown</u>, 461 F.3d 353 (3d Cir. 2006).

Here, Robinson alleges that defendants have persistently tampered with and/or opened his incoming legal mail outside of his presence.  He also alleges that his outgoing legal mail has been delayed or not mailed.  Robinson alleges that this interference with his legal mail was done in reprisal for his filed grievances and complaints.  Thus, the allegations in the Complaint, if true, may be sufficient at this time to support an interference with the mail claim, and this claim also will be allowed to proceed at this time.

H.   <u>Retaliation Claim</u>

Finally, Robinson's numerous allegations culminate in an overriding claim that defendants have retaliated against him in violation of his First and Fourteenth Amendment rights.  "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution ... ."  <u>White v. Napoleon</u>, 897 F.2d 103, 111-12 (3d Cir. 1990).  To prevail on a retaliation claim, plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from

exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.

Based on the allegations set forth in the Complaint, if true, Robinson may be able to support a claim of retaliation. He alleges that defendants purposely blocked his administrative remedy forms and prevented him from obtaining any meaningful investigation or administrative review of his complaints. Robinson also claims that defendants retaliated against him by threats, harassment, physical assault, the filing of false disciplinary charges against him, by conducting unjustified and overly-intrusive strip searches of plaintiff, and by withholding, delaying or interfering with plaintiff's incoming mail. Robinson further asserts that all of these actions or misconduct by defendants were done in retaliation against plaintiff because he had filed grievances or administrative remedy forms.

A prisoner's ability to file grievances and lawsuits against prison officials is a constitutionally protected activity for purposes of a retaliation claim. See Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981)(retaliation for exercising right

to petition for redress of grievances states a cause of action
for damages under the constitution); <u>Woods v. Smith</u>, 60 F.3d
1161, 1165 (5th Cir. 1995)(prison officials may not retaliate
against an inmate for complaining about a guard's misconduct),
<u>cert</u>. <u>denied</u>, 516 U.S. 1084 (1996).  Therefore, because Robinson
alleges that the retaliation was the result of his filing
grievances, he appears to meet the requisite elements of a
retaliation claim.  Namely, plaintiff has alleged (1) a
constitutionally protected activity, (2) that he was subjected to
adverse action by defendants, such as harassment, threats, strip
searches, interference with his legal mail, and false
disciplinary charges, and (3) that the filing of grievances was
the motivating factor in the defendants' decision to take adverse
action against plaintiff.  Therefore, this Court finds that
plaintiff's retaliation claim may proceed at this time.

V.   <u>CONCLUSION</u>

Therefore, for the reasons set forth above, plaintiff's
claims asserting denial of recreation, denial of medical care,
denial of access to the prison law library, and the filing of
false disciplinary charges, will be dismissed without prejudice,
in their entirety as against all defendants, for failure to state
a claim at this time, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)
and 1915A(b)(1).  However, plaintiff's conditions of confinement
claim, his unconstitutional strip search claim, his interference
with the mail claim, and his claim alleging retaliation by

defendants, shall be allowed to proceed at this time.  An
appropriate order follows.


Dated: November 26, 2008


                              s/ Garrett E. Brown, Jr.
                              GARRETT E. BROWN, JR., U.S.D.J.